IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:19–CV–0243–BR

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | ORDER |
| ALTON PERKINS, et al., | ) ) ) | |
| Defendants. | ) | |

This matter is before the court on Alton Perkins ("Perkins"), the Alton and Xiang Mei Lin Perkins Family Trust (the "Family Trust"), Yilaime Corporation of NC ("Yilaime NC"), Perkins Hsu Export Corporation ("PHE"), Yilaime Corporation of Nevada ("Yilaime NV"), and AmericaTowne Holdings, Inc.'s ("AmericaTowne") (collectively "defendants") motion to dismiss the United States Securities and Exchange Commission's ("SEC") complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (DE # 21.) Also, before the court is defendant Mabiala Phuati's ("Phuati") *pro se* motion to dismiss. (DE # 13.) These motions have been fully briefed and are ripe for disposition.

I. BACKGROUND

The SEC's allegations follow. Perkins, a resident of Wake Forest, North Carolina, is the Chairman, Chief Executive Officer ("CEO"), and majority shareholder, of Yilaime NC, PHE, AmericaTowne, and Yilaime NV. (See Compl., DE # 1, ¶ 14.) Phuati, a resident of Knightdale, North Carolina, was the Vice-Chairman and Managing Director of Yilaime NC and a Senior Executive Vice President of AmericaTowne. (Id. ¶ 19.) Phuati resigned on 5 June 2018. (Id.) Yilaime NC is a North Carolina corporation formed in May 2013. (Id. ¶ 15.) PHE is a Nevada corporation formed in October 2013 with its principal place of business in Raleigh, North

Carolina. (Id. ¶ 16.) AmericaTowne is a Nevada corporation, formerly known as ATI Modular Technology Corporation ("ATI"), formed on 1 August 2018. (Id.) Yilaime NV is a Nevada corporation formed in March 2013, with its principal place of business in Las Vegas. (Id. ¶ 18.) The Family Trust "was formed on or about January 1, 2014. Perkins and his wife are the grantors and investment trustees of the trust and had full control over the trust at all relevant times." (Id. ¶ 20.)

Yilaime NC and PHE issued three Regulation D offerings raising $1.1 million between January 2014 and April 2015. (Id. ¶ 26.) Yilaime NC issued one stock offering, raising $843,265, and one bond offering, raising $37,000. (Id. ¶ 26 (graph).) PHE issued one bond offering, raising $175,916. (Id.) For each offering, Yilaime NC and PHE filed a Form D with the SEC claiming that the offerings were exempt from registration pursuant to 17 C.F.R. § 230.506 ("Rule 506(b)"). (Id. ¶ 27.) In actuality, the offerings were not exempt. (Id. ¶¶ 28, 31.) Further, Perkins and Yilaime NC made misrepresentations and omissions involving "investment proceeds, entity expenses, related party transactions and Perkins'[s] own compensation." (Id. ¶ 32.)

Securities filings related to two AmericaTowne contracts are also at issue. "Perkins directed AmericaTowne to misrepresent in AmericaTowne's public filings that the company had two large contracts, collectively worth approximately $2 million. In reality, each was of limited or no value." (Id. ¶ 44.) The first contract was with a Nigerian export company "FEMEB" for a shipment of machinery and other equipment from Taiwan to Nigeria. (Id. ¶ 45.) The contract provided FEMEB pay AmericaTowne $849,000, with $25,000 due at signing. (Id. ¶ 46.)

The second contract was with the Export Company[1] for $1 million, with $10,000 due at signing. (Id. ¶ 52.) On 22 February 2017, AmericaTowne filed a Form 8-K announcing the 15-year contract. (Id. ¶ 51.) No later than April 2017, Perkins and AmericaTowne knew that the contract with the Export Company was of little or no value. (Id. ¶ 53.) Besides the $10,000 due at signing, no money has been paid under the Export Company contract. (Id. ¶ 55.)

As a result, the SEC alleges various violations of 15 U.S.C. §§ 77e ("Section 5") and 77q ("Section 17"), of the Securities Act of 1934 ("Securities Act"); 15 U.S.C. §§ 78j ("Section 10") and 78m ("Section 13") of the Securities Exchange Act ("Exchange Act"); and 17 C.F.R. §§ 240.10b-5 ("Rule 10b-5"), 240.12b-20 ("Rule 12b-20"), 240.13a-1 ("Rule 13a-1"), 240.13a-11 ("Rule 13a-11"), and 240.13a-13 ("Rule 13a-13").

## II.   DISCUSSION

"A district court should dismiss a complaint pursuant to Rule 12(b)(6) if, accepting all well-pleaded allegations in the complaint as true and drawing all reasonable factual inferences in the plaintiff's favor, the complaint does not allege enough facts to state a claim to relief that is plausible on its face." Vitol, S.A. v. Primerose Shipping Co., 708 F.3d 527, 539 (4th Cir. 2013). "[T]he court need not accept the [plaintiff's] legal conclusions drawn from the facts, nor need it accept as true unwarranted inferences, unreasonable conclusions, or arguments." Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009) (internal quotation marks and citation omitted). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the grounds of his

---

[1] The SEC identifies this entity as the "Export Company" in its complaint, but defendants identify the name of the corporation as "Blessed Auto." (See Mem. Supp. Mot. Dismiss, DE # 22, at 6.) In its response, the SEC continues to use the name "Export Company." (Resp. Opp'n, DE # 27, at 17.) Thus, for purposes of this 12(b)(6) motion, the court will employ the name the SEC uses in the complaint, "Export Company."

entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); accord Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).[2]

**A.      Fraud Claims [Counts One, Two, and Three]**

Defendants contend the SEC fails to state a claim as to Counts One, Two, and Three, alleging violations of Sections 17(a)(1), (2), and (3) of the Securities Act, Section 10(b) of the Exchange Act, and Rule 10b-5, (collectively the "fraud claims"), against Perkins, Yilaime NC, and PHE. Specifically, they contend the SEC fails to sufficiently allege intent to defraud in the form of a material misrepresentation and/or omission. (See Mem. Supp. Mot. Dismiss, DE # 22, at 10–11.)

In its complaint, the SEC contends Perkins, Yilaime NC, and PHE made misstatements and/or omissions involving the following material facts as to one or more of the offerings: (1) Perkins would receive investor money for trademark use; (2) Perkins was the owner of the trademarks; (3) Perkins would receive founder's stock in exchange for one of his trademarks; and (4) Perkins pled *nolo contendere* to a felony fraud offense in 2000 and received a cease and desist order in 2008 concerning a failure to disclose that plea. (Compl., DE # 1, ¶¶ 32–41; Resp. Opp'n, DE # 27, at 10.) The SEC contends each act amounts to a material misrepresentation and/or omission. (Resp. Opp'n, DE # 27, at 10–11.)

> Establishing a violation of Rule 10b–5 requires proof that the defendant made (1) material misrepresentations or materially misleading

---

[2] The parties disagree whether the court should consider the exhibits submitted by defendants in conjunction with the instant motion to dismiss. The court "may [] consider documents attached to the complaint, see Fed. R. Civ. P. 10(c), as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic[,]" Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009). For a document to be integral to the complaint, "it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document. It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document." Faulkner v. Beer, 463 F.3d 130, 134 (2d Cir. 2006) (internal citation omitted); accord Harty v. Luihn Four, Inc., 747 F. Supp. 2d 547, 551 (E.D.N.C. 2010), aff'd, 453 F. App'x 347 (4th Cir. 2011). Because these conditions have not been met, the court will not consider the subject exhibits.

omissions, (2) in connection with the purchase or sale of securities, (3) with scienter. Proving a violation of § 17(a)(1) requires substantially similar proof: '(1) material misrepresentations or materially misleading omissions, (2) in the offer or sale of securities, (3) made with scienter.' To establish a violation of § 17(a)(2) or (3), the SEC need only show that the first two elements of § 17(a)(1) were committed with negligence. Finally, the 'in connection with the purchase or sale of' and 'in the offer or sale of' elements of Rule 10b–5 and § 17(a) can be interchangeable.

SEC v. Radius Capital Corp., 653 F. App'x 744, 749 (11th Cir. 2016) (internal quotation marks and citations omitted); see also Aaron v. SEC, 446 U.S. 680, 697 (1980). To show materiality of an omission, "there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." Basic Inc. v. Levinson, 485 U.S. 224, 231–32 (1988); accord Greenhouse v. MCG Capital Corp., 392 F.3d 650, 656 (4th Cir. 2004). "The role of the materiality requirement is not to 'attribute to investors a childlike simplicity' but rather to determine whether a 'reasonable investor' would have considered the omitted information significant at the time." Hillson Partners Ltd. P'ship v. Adage, Inc., 42 F.3d 204, 213 (4th Cir. 1994) (quoting Basic, 485 U.S. at 232–34); see also Greenhouse, 392 F.3d. at 656 (finding, on the other hand, that a reasonable investor is not "an ostrich, hiding her head in the sand from relevant information"). "The 'total mix' of information available varies on a fact-specific and case-by-case basis . . . . [A] court ruling on a 12(b)(6) motion may look to 'documents or articles cited in the complaint, SEC filings, press releases, stock price tables, and other material on which the plaintiff's allegations necessarily rely.'" Greenhouse, 392 F.3d at 656–57 (citing Morris v. Wachovia Sec., Inc., 277 F. Supp. 2d 622, 629 (E.D. Va. 2003) (citing In re The First Union Corp. Sec. Litig., 128 F. Supp. 2d 871, 883 (W.D.N.C. 2001))).

Here, the SEC sufficiently alleges that Perkins's failure to disclose his *nolo contendere* plea as the Chairman, CEO, and majority shareholder of Yilaime NC and PHE was a material

5

omission. Defendants are correct that "Section 10(b) and SEC Rule 10b-5 do not create an affirmative duty to disclose any and all material information," including "mere generic assertions of legal compliance." Singer v. Reali, 883 F.3d 425, 440 (4th Cir. 2018). However, disclosure of material information is required to make statements, in the light of the circumstances under which they are made, not misleading. Id.; see 17 C.F.R. § 240.10b-5. The SEC claims that by failing to disclose his *nolo contendere* plea to fraud while "touting" his business reputation and history, Perkins has omitted a material fact. (See Compl., DE # 1, ¶¶ 39, 40). The court agrees. The SEC has sufficiently alleged, at a minimum, a material omission.[3] See United States v. Bachynsky, 415 F. App'x 167, 171–72 (11th Cir. 2011) (finding an investor's failure to disclose prior convictions, a lost medical license, and securities-fraud prohibitions, when positive aspects of his reputation were used to solicit new investors, a material omission); SEC v. Merch. Capital, LLC, 483 F.3d 747, 771 (11th Cir. 2007) ("a reasonable investor. . . is naturally interested in whether management is following the law in marketing the securities"). The motion to dismiss as to the fraud claims will be denied.

**B.     Securities Registration Violation[4] [Count Five]**

Defendants contend the SEC fails to state a claim as to Count Five, violations of Sections 5(a) and (c) of the Securities Act against Perkins and Yilaime NC, on two grounds. First, that "[t]he SEC fails to identify which offering specifically violated Section 5 of the Securities Act, and other than a cursory recitation of the elements, fails to provide any specific facts." (Mem.

---

[3] Section 17(a) and Rule 10b-5 require only a single misstatement or omission to amount to a violation. See e.g., 17 C.F.R. § 240.10b-5 ("any untrue statement of a material fact or to omit to state a material fact"). Accordingly, the court does not address the other three allegations of material omission or misrepresentation.

[4] Defendant Phuati, a *pro se* party, filed a combined answer and motion to dismiss. (DE # 13.) The SEC filed a response. (Resp. Opp'n, DE # 23.) Phuati provides no legal grounds entitling him to dismissal, rather, he affirms or denies various contentions made in the complaint against him. (See DE # 13, at 2). These denials and affirmations do not provide a basis for dismissal pursuant to Rule 12(b)(6), and in the alternative, the SEC has stated a claim for [whatever claim SEC alleges, failure to register securities?]against Phuati, (Compl., DE # 1, ¶¶ 74–77; accord Resp. Opp'n, DE # 23, at 3–4, 8). Phuati's motion will be denied.

Supp. Mot. Dismiss, DE # 22, at 12.) Second, that the SEC has failed to provide an explanation of why the Rule 506 exemption would not apply to Yilaime NC's Regulation D offerings. (Id.)

1. **Elements of Claim**

> Sections 5(a) and (c) of the Securities Act . . . prohibit any person, directly or indirectly, from using the mails or any other means of interstate commerce to offer or sell a security unless it is registered with the Commission or is exempt from registration. Scienter is not an element of a § 5 violation. Once the Commission makes a *prima facie* case that the securities sold were not registered, the defendants bear the burden of demonstrating that they were entitled to an exemption.

SEC v. Causwave, Inc., No. 1:15CV1068, 2018 WL 4625407, at *5 (M.D.N.C. Sept. 26, 2018) (internal quotations and citations omitted). "In order to establish a *prima facie* case for a violation of [Section] 5 of the Securities Act, the SEC must demonstrate that (1) the defendant directly or indirectly sold or offered to sell securities; (2) through the use of interstate transportation or communication and the mails; (3) when no registration statement was in effect." SEC v. Calvo, 378 F.3d 1211, 1214 (11th Cir. 2004) (citation omitted). "[W]hile a plaintiff is not required to plead facts that constitute a *prima facie* case in order to survive a motion to dismiss, see Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510–15[] (2002), '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" Coleman v. Maryland Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd 566 U.S. 30 (2012).

Here, SEC has sufficiently alleged factual allegations to raise a right to relief above a speculative level for a Section 5 violation. The SEC alleges Pekins, Yilaime NC, and Phuati offered and sold securities in connection with the two Yilaime NC offerings. (Compl., DE # 1, ¶¶ 26, 74.) The SEC contends that neither offering was registered with the SEC. (Id. ¶ 76.)

### 2. Rule 506(b) Exemption

In its complaint, the SEC alleges defendants did not properly follow Rule 506(b). (See Compl. DE # 1, ¶ 28.) Further, the SEC contends any exemption from registration requirements under Rule 506(b) is "an affirmative defense that would be inappropriate to resolve at this motion to dismiss stage." (Resp. Opp'n, DE # 27, at 16.)

> Under Rule 506(b), securities are exempt from registration if they are private offerings. A security qualifies as a private offering if there are fewer than 35 non-accredited investors of securities in the offering, and each non-accredited investor has such knowledge and experience in financial and business matters that he is capable of evaluating the merits and risks of the prospective investment.

SEC v. Schooler, 905 F.3d 1107, 1114 n.3 (9th Cir. 2018). However, "Rule 506(b) [] prohibits an issuer or 'any person acting on its behalf' from selling or offering to sell securities 'by any form of general solicitation or general advertising.'" SEC v. Schooler, No. 3:12–CV–2164–GPC–JMA, 2015 WL 2344866, at *2 (S.D. Cal. May 14, 2015) (quoting 17 C.F.R. § 230.502(c)); see also Ciuffitelli v. Deloitte & Touche LLP, No. 3:16–CV–00580–AC, 2018 WL 4568737, at *6 (D. Or. Aug. 1, 2018), report and recommendation adopted, 2018 WL 4568586 (D. Or. Sept. 21, 2018) (finding that under the specific conditions in 17 C.F.R. § 230.506(b) and general conditions of 17 C.F.R. § 230.502(c), a securities issuer may not engage in general solicitation or advertising and qualify for a Regulation D exemption); accord Eliminating the Prohibition Against General Solicitation and General Advertising in Rule 506 and Rule 144A Offerings, 78 Fed. Reg. 44771-01 (July 24, 2013) (to be codified at 17 C.F.R. pt. 230, 239 & 242). A Rule 506 exemption is an affirmative defense. See Schooler, 2015 WL 2344866, at *1; Ciuffitelli, 2018 WL 4568737, at *6.

Here, the SEC sufficiently alleges that the conditions of Rule 506(b) were not met. In its complaint, the SEC contends that "Perkins and Yilaime NC: (a) failed to conduct due diligence

with respect to whether the prospective investors were accredited or sophisticated, and (b) sent emails generally soliciting investors." (Compl. DE # 1, ¶ 28.) Further, Perkins did not adhere to the requirement that investors submit questionnaires concerning their accredited status, nor did he provide audited financial statements. (Id. ¶ 31.) As a result, "several investors in the Yilaime NC stock offering were not accredited investors." (Id. ¶ 30.) Given these contentions, it does not clearly appear on the face of the complaint that a Rule 506 exemption applies. See Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007) (internal citations and quotation marks omitted) ("[A] motion to dismiss filed under Federal Rule of Procedure 12(b)(6), which tests the sufficiency of the complaint, generally cannot reach the merits of an affirmative defense, . . . in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6). This principle only applies, however, if all facts necessary to the affirmative defense clearly appear[ ] on the face of the complaint."). The motion to dismiss as to Count Five will be denied.

**C.      Securities Reporting Violation [Count Six]**

Defendants contend the SEC has failed to state a claim as to Count Six, violations of Section 13(a) of the Exchange Act, against AmericaTowne. Defendants contend ATI, AmericaTowne's merged entity, complied with the Exchange Act as to the FEMEB and Export Company contracts in amended disclosures on Forms 10-Q and 10-K. (Mem. Supp. Mot. Dismiss, DE # 22, at 14–15.) Additionally, defendants contend the laws and regulations that govern public reporting do not contain requirements or guidance regarding the content of those reports, and accordingly, ATI's reliance on expert accounting and auditing professionals was sufficient. (Id.)

9

In its complaint, the SEC contends that AmericaTowne violated various securities regulation provisions: Section 13(a) of the Exchange Act and Rules 12b-20, 13a-1, 13a-11, and 13a-13. (Compl., DE # 1, ¶ 80.) Specifically, the SEC alleges AmericaTowne filed three forms, a 10-K, 10-Q, and an amended 8-K, with false information. (Id. ¶¶ 42–55.)

> Under [Section 13(a) of the Exchange Act] an issuer of securities must file with the SEC "(1) such information and documents . . . as the Commission shall require" and "(2) such annual reports . . . certified if required by the rules and regulations of the Commission by independent public accountants, and such quarterly reports . . . as the Commission may prescribe." The SEC has promulgated several regulations to enforce this rule: (1) an issuer must add to any required filing "such further material information . . . as may be necessary to make the required statements . . . not misleading," 17 C.F.R. [§] 240.12b-20; . . . and (3) an issuer shall "file a quarterly report on Form 10-Q," 17 C.F.R. [§] 240.13a-13.

SEC v. Jacoby, No. CV CCB–17–3230, 2018 WL 3732102, at *10 (D. Md. Aug. 3, 2018); see generally U.S. ex rel. Jones v. Collegiate Funding Servs., Inc., 469 F. App'x 244, 257 (4th Cir. 2012) (issuers must file a Form 8-K as needed (citing 17 C.F.R. § 240.13a-11)); Matrix Capital Mgmt. Fund, LP v. BearingPoint, Inc., 576 F.3d 172, 178 (4th Cir. 2009) (issuers must file a Form 10-K annually).

Here, the SEC has sufficiently alleged that AmericanTowne misrepresented material information in three of its filed forms. (See Compl., DE # 1, ¶¶ 44–55.) The SEC alleges that "Perkins directed AmericaTowne to misrepresent in AmericaTowne's public filings that the company had two large contracts, collectively worth approximately $2 million. In reality, each was of limited or no value." (Id. ¶ 44.) The SEC contends that on 19 August 2016, Perkins received notice that FEMEB was unable to perform under its contract, (id. ¶ 47), but on 14 November 2016, in its quarterly Form 10-Q, AmericaTowne listed $849,000 in revenue from the contract. (Id. ¶ 49.) Later, on 14 April 2017, AmericaTowne filed a Form 10-K for the period ending on 31 December 2016, with a sales return of $849,000, despite the fact FEMEB had

never paid the $849,000. (Id. ¶ 50.) Additionally, no later than April 2017, the SEC alleges Perkins and AmericaTowne knew that the contract with the Export Company was valueless, (id. ¶ 53), but on 14 November 2017, AmericaTowne filed an amended Form 8-K representing the agreement between the parties remained in full force and effect. (Id.) Company revenue and contract status are clearly material information for investors.

Further, Rule 12b-20 plainly requires an issuer to provide any material information as may be necessary to make required statements, such as those provides in Forms 10-Q, 10-K, and 8-K, in the light of the circumstances under which they are made, not misleading. See 17 C.F.R. § 240.12b-20. Whether defendant complied with Rule 12b-20 is in dispute. Such a dispute is factual in nature, and "[a] motion to dismiss under Rule 12(b)(6) . . . does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N. Carolina v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). The motion to dismiss as to Count Six will be denied.

**D.      Aiding and Abetting Claims [Counts Four and Seven]**

In its complaint, the SEC brings Count Four against Yilaime NV based upon its aiding and abetting the conduct pled in Counts One, Two and Three, (Compl., DE # 1, at 20), and Count Seven against Perkins based upon his aiding and abetting conduct pled in Count Six, (id. at 23). Defendants do not advance an argument specifically as to these counts; rather, it appears they rely on the dismissal of the underlying counts to dismiss the aiding and abetting claims. Because the underlying counts are not being dismissed, the motion to dismiss as to Count Four and Count Seven will be denied.

### III. CONCLUSION

For the foregoing reasons, Phuati's motion to dismiss is DENIED, (DE # 13), and defendants' motion to dismiss is DENIED, (DE # 21).

This 2 January 2020.

                                                                              _____
                                                                               W. Earl Britt
                                                                               Senior U.S. District Judge