IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:19-CV-243-FL

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| ALTON PERKINS; YILAIME CORPORATION OF NC; YILAIME CORPORATION OF NEVADA, PERKINS HSU EXPORT CORPORATION; AMERICATOWNE HOLDINGS, INC.; MABIALA PHUATI; and ALTON AND XIANG MEI LIN PERKINS FAMILY TRUST, | ) ) ) ) ) ) ) ) ) | ORDER |
| Defendants. | ) ) | |

This matter comes before the court on plaintiff's motion for partial summary judgment, pursuant to Rule 56(a) of the Federal Rules of Civil Procedure. (DE 72). Issues raised are ripe for ruling. For the following reasons, the motion is granted.

## STATEMENT OF THE CASE

Plaintiff initiated this action June 13, 2019, asserting defendants Alton Perkins ("Perkins"), Yilaime Corporation of NC ("Yilaime NC"), and Perkins Hsu Export Corporation ("Perkins Corp.") made material misstatements and omissions in connection with the offer and sale of securities, in violation of section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a) ("section 17(a)"), section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C § 78j(b) ("section 10(b)"), and 17 C.F.R. § 240.10b-5 ("rule 10b-5") promulgated thereunder (counts I through III) (collectively the "fraud claims"). It complains, too, that defendant Yilaime Corporation of Nevada

("Yilaime NV") aided and abetted this fraud (count IV). Plaintiff alleges defendants Perkins, Yilaime NC, and Mabiala Phuati ("Phuati") failed to register securities sold in connection with two Yilaime NC offerings, in violation of 15 U.S.C. § 77e ("section 5") (count V). Defendant AmericaTowne Holdings, Inc. ("AmericaTown"), plaintiff alleges, made three public filings with false information, in violation of 15 U.S.C. § 78m ("section 13"), 17 C.F.R. §§ 240.12b-20 ("rule 12b-20"), 240.13a-1 ("rule 13a-1"), 240.13a-11 ("rule 13a-11"), and 240.13a-13 ("rule 13a-13") promulgated thereunder (count VI), and defendant Perkins aided and abetted the same (count VII). Plaintiff also complaints that relief defendant Alton and Xiang Mei Lin Perkins Family Trust ("Family Trust"), denominated as relief defendant,[1] received and retains some of the investor funds allegedly obtained by fraud (count VIII). Plaintiff seeks injunctive relief, disgorgement of unjust enrichment or gains, and civil penalties.[2]

The court denied defendants' motions to dismiss January 2, 2020,[3] and voluminous discovery ensued, prolonged by issues emanating from the novel coronavirus and other concerns variously raised in eight consent motions to revise and extend the discovery schedule. Discovery delays then required cumulative extension of the dispositive motions deadline for about a year, up to September 28, 2021, on which date plaintiff filed the instant motion directed to the fraud claims

---

[1] A relief defendant is "part of a suit only as the holder of assets that must be recovered in order to afford complete relief." Commodity Futures Trading Comm'n v. Kimberlynn Creek Ranch, Inc., 276 F.3d 187, 192 (4th Cir. 2002). Plaintiff does not allege relief defendant Family Trust committed securities fraud, but rather joins it to facilitate the collection of funds traceable to securities fraud by others. See S.E.C. v. Cherif, 933 F.2d 403, 414 (7th Cir. 1991).

[2] The court has appended to this order a glossary with a more complete explanation of the claims and defendants involved.

[3] Senior U.S. District Judge W. Earl Britt presided over the case until June 2, 2022, when it was reassigned upon his retirement to the undersigned.

2

(counts I, II, and III) asserted against defendants Perkins, Yilaime NC, and Perkins Corp., and the claim for equitable relief of disgorgement (count VIII) against relief defendant Family Trust.

In support of its motion, plaintiff relies upon: 1) testimony of Nana Jorjoladze ("Jorjoladze"), paralegal for plaintiff; defendant Perkins; Jay Hsu ("Jay"), senior vice president of investment finance for AmericaTowne; and John Sherrick ("Sherrick"), staff accountant with plaintiff; 2) a criminal indictment and sentencing document against defendant Perkins originating in  State of Maryland v. Alton Perkins, Criminal Case No. CT991963X (Md. Cir. Ct.); 3) a desist and refrain order issued by the California Department of Corporations against defendant Perkins dated March 21, 2008; 4) private placement memoranda ("PPMs") (variously, the "Yilaime NC Bond PPM," the "Yilaime NC Stock PPM," and the "Perkins Corp. Bond PPM") 5) responses to interrogatories; 6) a Family Trust formation documents; 7) email transmittals between Jay and Perkins, among others; and 8) banking and brokerage accounts documentation.

Defendants Perkins, Perkins Corp., Yilaime NC, Yilaime NV,[4] and relief defendant Family Trust, responded in opposition, introducing into evidence: 1) correspondence issued from the Commonwealth of Virginia to defendant Perkins regarding an investigation of securities activities; 2) an intellectual property assignment agreement between Perkins and Yilaime corporation; and 3) a Yilaime business plan dated January 3, 2013.

## STATEMENT OF THE FACTS

The undisputed facts, viewed in the light most favorable to defendants, may be summarized as follows.[5]

---

[4]     While the instant motion is not directed against Yilaime NV, it concerns the alleged fraud plaintiff contends Yilaime NV aided and abetted in count IV.

[5]     Pursuant to Local Rule 56.1(a)(2), the court cites to paragraphs in the parties' statements of facts, or portions of such paragraphs, where not "specifically controverted by a correspondingly numbered paragraph in the opposing statement."

3

Defendants Yilaime NC and Perkins Corp. are corporations in the initial stages of operations, described as "startups," engaged in international exports. (Pl. Stmt. (DE 72-2) ¶¶ 12-13). For both, defendant Perkins served as "the Chairman, Chief Executive Officer, Chief Financial Officer, majority shareholder, and final decision-maker." (Id. ¶ 14). Defendant Perkins also was "the Chairman, Chief Executive Officer, Chief Financial Officer" and owner of defendant Yilaime NV, as well as, together with his wife, Xiang Mei Lin Perkins ("Lin"), the creator and beneficiary of relief defendant Family Trust. (Id. ¶¶ 15-16, 17-19).

Defendant Perkins previously was indicted by a grand jury in Maryland on 11 felony counts of fraudulently misappropriating more than $115,000.00 from 17 individuals to whom he owed a fiduciary duty. (Id. ¶¶ 1-2). He pleaded nolo contendere on August 31, 2000, and was sentenced to five years' incarceration, credited four days of time served with the balance suspended, and ordered to comply with terms of probation for three years. (Id. ¶¶ 4-5).

On March 21, 2008, the California Department of Corporations found that defendant Perkins failed to disclose in connection with the sale and offer of securities his plea of nolo contendere and the sentence following. (Id. ¶ 6). Defendant Perkins was ordered to "desist and refrain" from the sale of securities in the state of California, which punishment the California Department of Corporations found necessary for the protection of investors. (Defs. Exhibit 3 (DE 79-3) ¶ 6).

Beginning in approximately January 2014, defendants Perkins and Yilaime NC engaged in one bond offering and one stock offering. (Pl. Stmt. (DE 72-2) ¶¶ 20, 21, 23). The Yilaime NC bond offering sought to raise up to $15,000,000.00. (Id. ¶ 21). In connection with that offering, defendant Perkins created the Yilaime NC Bond PPM dated March 11, 2014, provided to investors, including by email transmittal. (Id. ¶ 22). The Yilaime NC stock offering also sought to raise up

4

to $15,000,000.00. (Id. ¶ 23). In connection with that offering, defendant Perkins created the Yilaime NC Stock PPM dated June 8, 2014, also provided to investors, including by email. (Id. ¶ 24).

The Yilaime NC Bond PPM and the Yilaime NC Stock PPM each state that defendant Yilaime NC is a "startup" company seeking to engage in the trading and exporting of U.S. goods to China. (Id. ¶ 26). They include pro-forma financial statements concerning future project costs. (Id. ¶ 27). The statements are devoid of any line item for intellectual property or for money otherwise to be paid to defendant Perkins directly. (See Pl. Exhibit 9: Yilaime NC Bond PPM (DE 72-13) at 81-84 (section titled "Pro Forma Financial Statements"); Pl. Exhibit 10: Yilaime NC Stock PPM (DE 72-14) at 79-83 (same)).[6] However, a section titled "Source and Use of Funds" includes a line item for intellectual property, with the amount listed as $550,000.00. (See Pl. Exhibit 9: Yilaime NC Bond PPM (DE 72-13) at 30; Pl. Exhibit 10: Yilaime NC Stock PPM (DE 72-14) at 28).

The Yilaime NC Bond PPM and the Yilaime NC Stock PPM additionally include a section titled "Certain Transactions" containing the following statement:

> Other than the transactions described below, there has not been any transaction or series of transactions to which [w]e were or will be a party in which any director or executive officer of the [c]orporation, any immediate family member of such person, or any person who will be considered to be a promoter of this [o]ffering has had a direct or indirect material interest.

(Pl. Exhibit 9: Yilaime NC Bond PPM (DE 72-13) at 54; Pl. Exhibit 10: Yilaime NC Stock PPM (DE 72-14) at 53). Below that is a single subsection titled "Related Party Transactions" providing:

> The founders lent the [c]ompany funds to cover the pre-developmental and research phase of the operations primarily conducted in China. Development costs included

---

[6] In citations to exhibits in the record, the court relies upon the pagination supplied by the court's case management/electronic case filing ("CM/ECF") system.

researching the market in China, visiting several locations and sites, conducting numerous meetings with government officials and business people in China, designing the actual concept as well as other areas covering pre-developmental stage costs and expenses. While in China which covered an almost three year period, Chinese citizens were hired to help with research, and coordinating applications and procedures with government officials in China.

The founders covering these expenses included Mr. Perkins, Mr. Hu, and Mr. Williams of the USA and Mr. Li of China. The [c]ompany signed promissory notes for only a portion of the funds lent. The remaining expenses, including considerable time and effort by the founders were either accounted for as founders['] stock or not expensed, and rendered to the [c]ompany at no costs.

The various notes total $115,000 and carry interest from 7.5% to 9.0%. The [n]otes are to be paid within six to 12 months.

Previously Mr. Perkins [footnote omitted] was on the board of two reporting companies. At present, founders do not serve on any outside boards.

(Pl. Exhibit 9: Yilaime NC Bond PPM (DE 72-13) at 55; Pl. Exhibit 10: Yilaime NC Stock PPM

(DE 72-14) at 54). The Yilaime NC Bond PPM additionally includes the following paragraph:

Pursuant to agreement with the [c]ompany and Mr. Perkins, the [c]ompany acquired rights to the "AmericaTowne® and AmericaStreet™." In [e]xchange for founders' stock Mr. Perkins provided perpetual intellectual property rights to the [c]orporation. These rights are outlined in the "Intellectual Property License and Preservation Agreement" between Mr. Perkins and the [c]ompany.

(Pl. Exhibit 9: Yilaime NC Bond PPM (DE 72-13) at 55).

Elsewhere, in a section titled "Principal Shareholders," both the Yilaime NC Bond PPM and the Yilaime NC Stock PPM expressly state that no executive officers or directors received cash compensation for services rendered. (Pl. Stmt. (DE 72-2) ¶ 34). In a section titled "Management" and "Directors, Executive Officers and Key Advisors," defendant Perkins is described as the "Chairman and Chief Executive Officer, and President" of defendant Yilaime NC. (Id. ¶ 35).

The PPMs also describe some of defendant Perkins's biographical background, including "starting companies 'from [the] ground-up' and serving as 'Chairman, Chief Executive Officer,

President, Principal Accounting and Financial Officer of two companies that reported to the U.S. Securities and Exchange Commission.'" (Id. ¶ 36). No mention is made in those sections of defendant Perkins's past criminal history. (Id. ¶ 37). The sole mention of Perkins's securities disciplinary history is contained in a footnote that reads:

> [6] Mr. Perkins served as Chairman and CEO [of] two public reporting companies, both has [sic] ceased their public reporting status. Over 10 years ago Mr. Perkins participated in a private business and the [c]ourts sanctioned him. In conjunction with completing a private transaction a state security official who without full material to base its decision made an adverse ruling against him. Upon subsequent review by security officials in Mr. Perkins' home state, it was determined that after investigating [sic] "after careful review of the matter and the applicable law we have concluded that know [sic] further action is warrant[ed] . . . and this matter is closed."

(Id. ¶ 38). Additional information regarding defendant Perkins's criminal and securities disciplinary history was also not otherwise disclosed to investors in Yilaime NC. (Id. ¶ 39).

Between January 2014 and April 2015, defendant Yilaime NC raised approximately $1,000,000.00 through the stock and bond offerings. (Id. ¶ 40). All of this money was deposited into a Wells Fargo Bank account ending in 2566 ("Wells Fargo #2566 Account"), which belonged to defendant Perkins's entity, Yilaime NV. (Id. ¶ 41). Defendant Perkins and his wife, Lin, created and controlled the account. (Id. ¶ 42).

Separately, in 2015, defendant Perkins Corp. engaged in a bond securities offering which sought to raise $22,000,000.00. (Id. ¶ 43). Investor funds received were sent via wire transfer, as well as being deposited electronically. (Id. ¶ 45). In connection with the Perkins Corp. offering, defendant Perkins drafted and provided to investors the Perkins Corp. Bond PPM dated January 1, 2015. (Id. ¶ 44). The Perkins Corp. PPM explains that Perkins Corp. aids exporters of "U.S. made goods and services," and planned to profit from taxes available to those exporting companies. (Id. ¶ 47).

The Perkins Corp. Bond PPM includes a section titled "Certain Transactions" identical to that excerpted above in relation to the Yilaime NC Stock PPM and the Yilaime NC Bond PPM,

providing Perkins Corp. had engaged in no insider transactions with its officers or family members of officers, which included Perkins:

> Other than the transactions described below, there has not been any transaction or series of transactions to which [w]e were or will be a party in which any director or executive officer of the [c]orporation, any immediate family member of such person, or any person who will be considered to be a promoter of this [o]ffering has had a direct or indirect material interest.

(Id. ¶ 50). Below that is a subsection titled "Related Party Transactions" nearly identical to the Yilaime NC Bond PPM and the Yilaime NC Stock PPM, and like the Yilaime Bond PPM it includes reference to an intellectual property agreement between the company and defendant Perkins:

> The founders lent the [c]ompany funds to cover the pre-developmental and research phase of the operations primarily conducted in China. Development costs included researching the market in China, visiting several locations and sites, conducting numerous meetings with government officials and business people in China, designing the actual concept as well as other areas covering pre-developmental stage costs and expenses. While in China which covered an almost three year period, Chinese citizens were hired to help with research, and coordinating applications and procedures with government officials in China.

> The founders covering these expenses included Mr. Perkins, Mr. Hu, and Mr. Williams of the USA and Mr. Li of China. The [c]ompany signed promissory notes for only a portion of the funds lent. The remaining expenses, including considerable time and effort by the founders were either accounted for as founders['] stock or not expensed, and rendered to the [c]ompany at no costs.

> The various notes total $750,000 and carry interest from 7.5% to 9.0%. The [n]otes are to be paid within six to 12 months.

> Pursuant to agreement with the [c]ompany and Mr. Perkins, the [c]ompany acquired rights to the "AmericaTowne® and AmericaStreet™." In [e]xchange for founders' stock Mr. Perkins provided perpetual intellectual property rights to the [c]orporation. These rights are outlined in the "Intellectual Property License and Preservation Agreement" between Mr. Perkins and the [c]ompany.

> For agreeing to serve as [d]irectors of the [c]orporation the Zhou [b]rothers received founders['] stock. All founders['] stock was purchased at $.05 a share pursuant to Section 4(2) of the Securities Act of 1933.

8

> Previously Mr. Perkins [footnote omitted] was on the board of two reporting companies. At present, founders do not serve on any outside boards.

(Pl. Exhibit 11: Perkins Corp. Bond PPM (DE 72-15) at 42). Other than as set forth in the "related party transactions" sections, nowhere in the Perkins Corp. PPM does it state that funds were owed to defendant Perkins personally. (Pl. Stmt. (DE 72-2) ¶ 51). The Perkins Corp. PPM also expressly states that no executive officers or directors received any cash compensation for services rendered. (Id. ¶ 52).

The Perkins Corp. PPM includes pro-forma financial statements containing future project costs. (Id. ¶ 53). The statements are devoid of any line item for intellectual property, and they do not list any funds due to defendant Perkins. (See Pl. Exhibit 11: Perkins Corp. Bond PPM (DE 72-15) at 68-70). They do, however, refer generally to company debt, both short term and long term. (Id. at 69).

The Perkins Corp. PPM's section entitled "Management" and "Directors, Executive Officers and Key Advisors" describes defendant Perkins as the "Chairman and Chief Executive Officer, and President" of Perkins Corp. (Pl. Stmt. (DE 72-2) ¶ 55). The Perkins Corp. PPM provides "certain biographical background of [defendant] Perkins, including that he started companies 'from [the] ground-up' and serves as 'Chairman, Chief Executive Officer, President, Principal Accounting and Financial Officer of two companies that reported to the U.S. Securities and Exchange Commission.'" (Id. ¶ 56). The only mention in the Perkins Corp. PPM of defendant Perkins's past criminal and securities regulatory history is in a footnote that reads:

> [2] Mr. Perkins served as Chairman and CEO [of] two public reporting companies, both has [sic] ceased their public reporting status. Over 15 years ago Mr. Perkins participated in a private business and the [c]ourts sanctioned him. In conjunction with completing a private transaction a state security official who without full material to base its decision made an adverse ruling against him and directed a [c]ease and [d]esist action be taken against Mr. Perkins. Further Mr. Perkins was alleged to have been convicted of a crime in the [s]tate of Maryland. Mr. Perkins confirms that he was not convicted of a crime pursuant to Maryland law. However, he did plead no-lo [sic] contender to an action which resulted in Mr. Perkins receiving a suspended sentence. Additionally, Mr. Perkins sued individuals for defamation and liable [sic] for the false assertion that he had been convicted of

9

the alleged action. Mr. Perkins was awarded a judgment exceeding $125,000 for defamation and liable [sic]. Further, [u]pon subsequent review by security officials in Mr. Perkins' home state, it was determined that after investigating [sic] "after careful review of the matter and the applicable law we have concluded that know [sic] further action is warrant[ed] . . . and this matter is closed."

(Id. ¶ 57). This footnote is the sole disclosure to Perkins Corp. investors of Perkins's criminal and securities disciplinary history. (Id. ¶ 58).

Between April 15, 2015, and April 28, 2015, defendant Perkins Corp. raised at least $184,142.00 through the offering. (Id. ¶ 59). The entirety of these funds were deposited into the Wells Fargo #2566 Account. (Id. ¶ 60).

In this manner, all the money raised through the Yilaime NC offerings and the Perkins Corp. offering were deposited into the Wells Fargo #2566 Account. (Id. ¶ 61). Perkins thereafter used at least $764,000.00 of the funds for his private use, including $584,000.00 to buy his personal residence, owned by relief defendant Family Trust. (Id. ¶¶ 61, 71).

## COURT'S DISCUSSION

A.      Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[7] The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Only disputes between the parties over facts

---

7       Internal citations and quotation marks are omitted from all citations unless otherwise specified.

that might affect the outcome of the case properly preclude the entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party).

"[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 241 (4th Cir. 1982). Thus, judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a [triable] issue is created," and judgment as a matter of law should be denied. Id. at 489-90.

B.    Summary Judgment Against Defendants Perkins, Yilaime NC, and Perkins Corp.

Plaintiff contends the undisputed evidence establishes these defendants violated the anti-fraud provisions of the securities laws by making false and misleading statements in connection with the Yilaime NC and Perkins Corp. securities offerings, as alleged in the fraud claims. The court agrees.

Section 17(a) of the Exchange Act, which applies only to sellers, provides:

It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly—

(1) to employ any device, scheme, or artifice to defraud, or
(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
(3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

15 U.S.C. § 77q(a).

Section 10(b), which applies to both buyers and sellers, makes it unlawful "[t]o use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe."  15 U.S.C. § 78j(b).  Section 10(b) is implemented by rule 10b-5, which makes it unlawful "[t]o employ any device, scheme or artifice to defraud[;] [t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made . . . not misleading, or[;] [t]o engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person."  17 C.F.R. § 240.10b-5; see Singer v. Reali, 883 F.3d 425, 437–38 (4th Cir. 2018) (referring to section 10(b) and Rule 10b-5 as "companion regulatory provision[s]").

12

Courts apply identical tests for determining liability under sections 17(a)(1), 10(b), and rule 10b-5.  See Aaron v. SEC, 446 U.S. 680, 701-02 (1980); U.S. SEC v. Pirate Inv. LLC, 580 F.3d 233, 237 n.1 (4th Cir. 2009); see, e.g., SEC v. Frohling, 851 F.3d 132, 136 (2d Cir. 2016); SEC v. Gotchey, No. 91-1855, 1992 WL 385284, at *1 (4th Cir. Dec. 28, 1992).  To prove liability, the Securities and Exchange Commission ("SEC") must establish that defendant 1) made a false statement or omission 2) of material fact 3) with scienter 4) in connection with the purchase or sale of securities.  Pirate Inv. LLC, 580 F.3d at 239.  The SEC additionally must establish that defendants 5) used the instrumentalities of interstate commerce in their fraudulent offerings.  See 15 U.S.C. § 77q(a); 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5.  The test under subsections 17(a)(2) and 17(a)(3) is the same, except that the SEC does not need to prove the third element of scienter.  Aaron, 446 U.S. at 697.  ("[T]he language of § 17(a) requires scienter under § 17(a)(1), but not under § 17(a)(2) or § 17(a)(3).").  "The SEC bears the burden of establishing each element by a preponderance of the evidence."  Pirate Inv. LLC, 580 F.3d at 239.

The court addresses these elements below.

1.      False Statement or Omission

The first element necessary to state a claim under sections 17(a), 10(b), and rule 10b-5 is "a material misrepresentation or omission by the defendant."  Stoneridge Inv. Partners, 552 U.S. at 157.  "To allege a false statement or omission of material fact, plaintiffs must point to a factual statement or omission—that is, one that is demonstrable as being true or false."  Nolte v. Capital One Fin. Corp., 390 F.3d 311, 315 (4th Cir. 2004).

Sections 17(a), 10(b), and rule 10b-5 "do not create an affirmative duty to disclose any and all material information."  Singer, 883 F.3d at 440.  "Nevertheless, disclosure of material information is required when necessary to make statements made, in the light of the circumstances

under which they were made, not misleading." Id. "In other words, companies can control what they have to disclose under [sections 17(a), 10(b), and rule 10b-5] by controlling what they say to the market." Id.

Plaintiff contends defendants made two misrepresentations in the PPMs at issue. First the PPMs indicate investor funds would be used for corporate purposes, including marketing, promotion, and insurance, when, in fact, defendant Perkins took for himself a minimum of $764,000.00 of the approximately $1,000,000.00 raised for his personal use. Second, after touting defendant Perkins's background, including his prior experience as the chief executive officer of several small corporations, defendants failed to disclose fully defendant Perkins's criminal and securities disciplinary history.

It is undisputed that defendant Perkins expended at least $764,000.00 of the approximately $1,000,000.00 raised on personal expenses, including the purchase of a new residence. The relevant inquiry is whether the PPMs created by defendant Perkins and provided to investors placed the investors on notice of those intended expenditures.

The Yilaime NC Bond PPM and the Yilaime NC Stock PPM both explain that Yilaime NC is a "startup" company seeking to engage in the trading and exporting of U.S. goods to China. (Pl. Stmt. (DE 72-2) ¶ 26). Similarly, the Perkins Corp. PPM provides that Perkins Corp. aids exporters of U.S. made goods and services. (Id. ¶ 47). In explanation of how proceeds will be used, all three PPMs include some iteration of the following:

> Summary of the Offering: Management created this offering to provide investors with the key elements of a quality investment vehicle. The purchase price of the [b]onds are payable in USD or Bitcoins upon delivery of the Subscription Agreement. The proceeds of this [o]ffering will be used for all general business purposes in carrying out the [c]ompany's [b]usiness [p]lan.

14

(Pl. Exhibit 9: Yilaime NC Bond PPM (DE 72-13) at 23; Pl. Exhibit 10: Yilaime NC Stock PPM (DE 72-14) at 23 (same); see Pl. Exhibit 11: Perkins Corp. Bond PPM (DE 72-15) at 42 ("Management created this offering to provide investors with the key elements of a quality investment vehicle, using both Convertible Participating Common Shares and Convertible Notes.")).

The PPMs additionally include pro forma financial statements and a business plan that set forth future project costs, including, for example, marketing and promotion, contract services, office rent, utilities, and website development, depicted as follows:

# 23.0 Exhibits – Pro forma Financial Statements

## 23.1 Business Plan – Pro forma Income Statement

| | Year 1 | Year 2 | Year 3 | Year 4 | Year 5 |
|---|---|---|---|---|---|
| Revenue | $10,505,000 | $19,400,000 | $41,400,000 | $59,650,000 | $80,800,000 |
| Direct Cost | $5,937,250 | $11,085,000 | $24,195,000 | $35,150,000 | $47,590,000 |
| Gross Margin | $4,567,750 | $8,315,000 | $17,205,000 | $24,500,000 | $33,210,000 |
| Gross Margin % | 43% | 43% | 42% | 41% | 41% |
| Operating Expenses | | | | | |
| Salary | $236,172 | $1,252,863 | $1,843,967 | $3,557,846 | $3,588,866 |
| Employee Related Expenses | $59,048 | $313,217 | $460,994 | $889,464 | $897,218 |
| Marketing & Promotion | $155,700 | $388,000 | $828,000 | $1,193,000 | $1,616,000 |
| Importer Procurement Services | $64,000 | $100,000 | $150,000 | $200,000 | $250,000 |
| Legal and Accounting | $60,000 | $70,000 | $80,000 | $90,000 | $100,000 |
| License Fees | $31,000 | $50,000 | $75,000 | $100,000 | $150,000 |
| Communication Services | $21,000 | $36,000 | $36,000 | $36,000 | $36,000 |
| Contract Services | $1,500 | $3,000 | $3,000 | $3,000 | $3,000 |
| Shipping & Packing | $40,000 | $60,000 | $60,000 | $60,000 | $60,000 |
| Office Rent | $82,500 | $90,000 | $90,000 | $90,000 | $90,000 |
| Utilities | $1,500 | $3,000 | $3,000 | $3,000 | $3,000 |
| Office Supplies | $300 | $1,200 | $1,200 | $1,200 | $1,200 |

71

(Pl. Exhibit 9: Yilaime NC Bond PPM (DE 72-13) at 81; see Pl. Exhibit 10: Yilaime NC Stock PPM (DE 72-14) at 79; Pl. Exhibit 11: Perkins Corp. Bond PPM (DE 72-15) at 68).

16

The Yilaime NC Bond PPM and Yilaime NC Stock PPM also contain sections excerpted above titled "Certain Transactions" and "Related Party Transactions" stating that the four founders, including defendant Perkins, were owed for various notes totaling $115,000.00 (carrying interest from 7.5% - 9%), with all other expenses incurred by them either accounted for as founders stock or not expensed, and rendered to Yilaime NC at no costs. (Pl. Exhibit 9: Yilaime NC Bond PPM (DE 72-13) at 55; Pl. Exhibit 10: Yilaime NC Stock PPM (DE 72-14) at 54). The Yilaime NC Bond PPM section concerning "Related Party Transactions" also notes that Yilaime NC had acquired perpetual intellectual property rights to the "AmericaTowne" and "AmericaStreet" trademarks from defendant Perkins in exchange for founders' stock. (Exhibit 9: Yilaime NC Bond PPM (DE 72-13) at 55. The Yilaime NC Stock PPM does not mention that transaction.

Both the Yiliaime NC Stock PPM and the Yilaime NC Bond PPM provide that other than these transactions, Yilaime NC had engaged in no insider transactions with its officers or family members of officers. In a section titled "Principal Shareholders" both PPMs additionally assure investors that that none of the executive officers or directors had received any cash compensation for services rendered, and further describe defendant Perkins as the "Chairman and Chief Executive Officer, and President" of Yilaime NC. (Exhibit 9: Yilaime NC Bond PPM (DE 72-13) at 51-52; Pl. Exhibit 10: Yilaime NC Stock PPM (DE 72-14) at 50-51).

Similarly, the "Certain Transactions" and "Related Party Transactions" sections of the Perkins Corp. PPM state that founders of Perkins Corp., including defendant Perkins, were owed a total of $750,000.00 for various notes (carrying interest from 7.5% - 9%), with all other expenses incurred by them either accounted for as founders stock or not expensed, and rendered to Perkins Corp. at no costs. (Pl. Exhibit 11: Perkins Corp. Bond PPM (DE 72-15) at 42). Also, as in the Yilaime NC Bond PPM, the "Related Party Transactions" section noted that Perkins Corp. had

acquired perpetual intellectual property rights to the "AmericaTowne" and "AmericaStreet" trademarks from defendant Perkins in exchange for founders' stock. (Id.). Other than as set forth in the "related party transactions" sections, the Perkins Corp. PPM is devoid of reference to obligations due to defendant Perkins personally. (Pl. Stmt. (DE 72-2) ¶ 51). The Perkins Corp. PPM indeed expressly states that none of its executive officers or directors had received any cash compensation for services rendered. (Id. ¶ 52).

On these undisputed facts, the Yilaime NC investors were reasonably on notice that some of the $1,000,000.00 raised by the Yilaime NC offerings would go to defendant Perkins to reimburse his part of the $115,000.00 plus interest lent to Yilaime NC. Similarly, the Perkins Corp. investors were on notice that some of the $184,142.00 raised by the Perkins Corp. offerings would go to defendant Perkins to reimburse his part of the $750,000.00 plus interest lent to Perkins Corp. The investors were not on notice, however, that roughly $764,000.00 of the $1,000,000.00 collectively raised, or 76.4% of the funds, would go to defendant Perkins personally. Such distribution is inconsistent with the stated purpose of using the money raised for "general business purposes" in the Yilaime NC Bond PPM and the Yilaime Stock PPM and with the pro forma financial statements as well as the "Certain Transactions" and "Related Party Transactions" sections included in all three PPMs. Where it is undisputed that defendant Perkins did in fact take roughly $764,000.00 of the $1,000,000.00 collectively raised for his personal use, defendants in all three offerings misrepresented the purpose for which investor funds would be utilized.

Defendants' arguments to the contrary are unavailing. According to defendants, defendant Perkins was entitled to $550,000.00 per year pursuant to an intellectual property agreement between defendant Perkins and both Yilaime NC and Perkins Corp. Defendants argue this

disclosure was made in "multiple areas" of the PPMs, but rest primarily on a line item included in

a chart outlining the uses of funds in the Yilaime NC offerings:

## 6.0 Source and Use of Funds

| Sources of Funds | Amount |
|---|---|
| Common Shares | $8,000,000 |
| Allocations and In-Kind Contributions by Meishan Ningbo | $900,000 |
| Equity Invested by Owners | $1,310,000 |
| Total Amount Received | 10,210,000 |
| | |
| Uses of Funds | |
| Project Budget - Pre Startup | Amount |
| Real Estate | $200,000 |
| Prepaid Expenses (Meishan) | $900,000 |
| Meishan Wholly Owned Enterprise | $490,000 |
| Marketing & Promotion | $150,000 |
| Professional Services (Legal & Accounting) | $45,000 |
| Travel & Accommodations | $40,000 |
| China Office Fees - Advanced & Build out | $44,500 |
| USA Office Operations | $150,000 |
| Insurance | $4,000 |
| Web & Data base development | $195,000 |
| Equipment | $50,000 |
| Art Inventory | $560,000 |
| Trademarks & License | $550,000 |
| Notes Retired | $117,551 |
| Investments | $3,000,000 |
| Working capital | $3,543,034 |
| Cash Reserve | $170,915 |
| Total Project Costs | $10,210,000 |

(Defs. Exhibit 6: Yilaime NC Stock PPM (DE 79-7) at 29 (highlighting added); Defs. Exhibit 7:

Yilaime NC Bond PPM (DE 79-8) at 31 (same).   This chart, however, indicates only that

$550,000.00 out of the $10,210,000.00 sought from Yilaime NC investors, or roughly 5.4% of

investor funds raised, would be allocated for "trademarks and license."  Such disclosure plainly

does not put investors on notice that over 75% of the funds raised would be diverted for that

purpose.  It also does not put investors on notice that the funds would go to defendant Perkins

personally.   Indeed, any such inference is rebutted by affirmative statements elsewhere that

defendant Perkins had granted "perpetual rights" to the "AmericaTowne" and "AmericaStreet" trademarks in exchange for "founders stock" and that no other related party transactions had occurred.  (See Pl. Exhibit 9: Yilaime NC Bond PPM (DE 72-13) at 55; Pl. Exhibit 11: Perkins Corp. Bond PPM (DE 72-15) at 42; see also Pl. Exhibit 10: Yilaime NC Stock PPM (DE 72-14) at 54 (reference to the intellectual property agreement with defendant Perkins omitted entirely).

Defendants also make reference to a business plan for a different entity, Yilaime NV, which defendants contend all three PPMs incorporated by reference.  Defendants fail, however, to cite to a page in the PPMs where such incorporation is made, and the court's search has yielded none.  (See Defs. Resp. (DE 79) at 5 (citing generally to the Perkins Corp. bond offering for the proposition that all offerings "incorporated by reference disclosures in the Yilaime business plan, which thoroughly details the payments due to Perkins under the [intellectual property] agreement").  Defendants additionally fail to provide evidence that the Yilaime NV business plan was made available to Yilaime NC and Perkins Corp. investors.

Turning, then, to defendant Perkins's criminal and disciplinary history, it is undisputed that all three PPMs provide favorable biographical information about defendant Perkins, including that he "start[ed] companies 'from [the] ground-up' and serv[ed] as 'Chairman, Chief Executive Officer, President, Principal Accounting and Financial Officer of two companies that reported to the U.S. Securities and Exchange Commission.'"  (Pl. Stmt. (DE 72-2) ¶¶ 36, 56).  It is also undisputed that defendant Perkins previously was indicted on and pleaded nolo contendere to eleven felony counts of fraudulent misappropriation by a fiduciary.  The court sentenced him to five years' incarceration, with four days of time served and the balance suspended, and three years of supervised probation.  Finally, it is undisputed that the California Department of Corporations later ordered defendant Perkins to desist and refrain from the sale of securities in the state of

California based on its finding that he failed to disclose his plea of nolo contendere to eleven counts of fraudulent misappropriation in connection with the offer and sale of securities.

Where "disclosure of material information is required when necessary to make statements made . . . not misleading," the question here is whether defendant Perkins sufficiently disclosed his criminal and disciplinary history to make his statements about his favorable business experience not misleading. <u>Singer</u>, 883 F.3d at 440. As excerpted above, the Yilaime NC Stock PPM and Yilaime NC Bond PPM include an identical footnote providing that over ten years prior defendant Perkins "participated in a private business and the [c]ourts sanctioned him." (Pl. Exhibit 9: Yilaime NC Bond PPM (DE 72-13) at 55; Pl. Exhibit 10: Yilaime NC Stock PPM (DE 72-14) at 54). It is further elaborated in the footnote that a state security official made an adverse ruling against him "without full material to base its decision." (<u>Id.</u>). Upon subsequent review by a security official in defendant Perkins's home state, however, it was determined that no further action was warranted, and the matter was closed. It is undisputed that there was no other disclosure of Perkins's criminal or disciplinary history in the PPMs, nor was this information otherwise disclosed to investors.

There is no mention in this footnote of defendant Perkins's plea of nolo contendere to charges of fraud by a fiduciary and his subsequent criminal sentence. Although it refers generally to defendant Perkins's disciplinary history, the footnote fails to disclose that defendant Perkins was ordered to desist and refrain from further sale of securities in the state of California based on the finding that he failed to disclose material information about his criminal history. On these undisputed facts, defendants omitted factual information about defendant Perkins's criminal and disciplinary history in the Yilaime NC offerings.

21

In the Perkins Corp. offering, defendants included much the same regarding defendant Perkins's disciplinary history, noting in a footnote that previously defendant "Perkins participated in a private business and the [c]ourts sanctioned him." (Pl. Exhibit 11: Perkins Corp. Bond PPM (DE 72-15) at 42. Further, a state security official "without full material to base its decision" directed that a "[c]ease and [d]esist action be taken against [defendant] Perkins." (Id.). Thus, defendants provided further detail by disclosing that the sanction was a cease-and-desist order, but again defendants omit mention of the factual basis for that order and of the details of the sanction. Such omissions are conspicuous where the sanction prohibited the exact conduct in question here in another state.

Unlike the Yilaime NC Bond PPM and Yilaime NC Stock PPM, the footnote included in the Perkins Corp. PPM does note that defendant Perkins "was alleged to have been convicted of a crime in the [s]tate of Maryland." (Id.). It is further elaborated in the footnote that "Perkins confirms that he was not convicted of a crime pursuant to Maryland law. However, he did plead no-lo contender [sic] to an action which resulted in [defendant] Perkins receiving a suspended sentence." (Id.). The Perkins Corp. PPM neglects to mention the basis of the charges, fraudulent misappropriation by a fiduciary, and it provides further, this time apparently in reference to the criminal charge, that "[u]pon subsequent review by security officials in [defendant] Perkins' home state, it was determined that after investigating 'after careful review of the matter and the applicable law we have concluded that know [sic] further action is warrant[ed] . . . and this matter is closed." (Id. at 42-43). Such an evasive and defensive depiction of the charges renders favorable mention of defendant Perkins's business experience elsewhere in the PPMs misleading.

In sum, on these undisputed facts, defendants misrepresented the purpose for which investor funds would be used and misleadingly omitted factual information about defendant Perkins's criminal and disciplinary history in the Yilaime NC and Perkins Corp. PPMs.

2.      Of Material Fact

A material misrepresentation or omission exists where "there is a substantial likelihood that a reasonable purchaser or seller of a security 1) would consider the fact important in deciding whether to buy or sell the security or 2) would have viewed the total mix of information made available to be significantly altered by the disclosure of the fact." Pirate Inv. LLC, 580 F.3d at 240. A fact is material as a matter of law, and consequently properly resolved at summary judgment, if it is "so obviously important to an investor that reasonable minds cannot differ on the question." TSC v. Northway, 426 U.S. 438, 450 (1976).

Here, as described above, defendants made misrepresentations and omissions regarding the use of the investor funds by failing to disclose that over 75% of the investments would be paid to defendant Perkins personally. Such information about diversion of corporate funds for personal use necessarily is "so obviously important to an investor that reasonable minds cannot differ on the question." TSC, 426 U.S. at 450; see, e.g., Gotchey, 1992 WL 385284, at *1 ("A reasonable investor would obviously have found much significance in Gotchey's assurances as to where the money would be invested."); SEC v. Rsch. Automation Corp., 585 F.2d 31, 35-36 (2d Cir. 1978) ("What reasonable investor would not wish to know that the money raised by stock sales would not be used for working capital but be diverted to RAC's officers? It is beyond cavil that appellants' misleading statements and omissions concerned facts that were material as a matter of law."). Defendants' misrepresentations and omissions as to the use of investors' funds were accordingly material as a matter of law.

23

As to defendants' misrepresentations and omissions pertaining to defendant Perkins's criminal and disciplinary history, "a reasonable investor. . . is naturally interested in whether management is following the law in marketing the securities." SEC v. Merch. Capital, LLC, 483 F.3d 747, 771 (11th Cir. 2007) see Breard v. Sachnoff & Weaver, Ltd., 941 F.2d 142, 143-44 (2d Cir. 1991) (failure to disclose that key financier and guarantor had pled guilty to fraud in connection with similar scheme, if proven, was material); Zell v. InterCapital Income Sec., Inc., 675 F.2d 1041, 1046 (9th Cir. 1982) (proxy statement might be materially misleading if failed to disclose lawsuits charging violations of state and federal securities laws and if those lawsuits bore on investment advisor's management ability). It is undisputed that defendant Perkins pleaded nolo contendere to an indictment charging him with eleven counts of misappropriating funds from individuals to whom he owed a fiduciary duty. Similarly, it is undisputed that defendant Perkins was subject to a desist and refrain order disallowing the exact conduct at issue in this case in the state of California based on the finding that it was necessary for the protection of investors. "[R]easonable minds cannot differ on the question" of whether an investor would wish to know this information before investing their funds in a company where defendant Perkins serves as chairman, chief executive officer, chief financial officer, majority shareholder, and final decision-maker. TSC, 426 U.S. at 450; see, e.g., United States v. Bachynsky, 415 F. App'x 167, 172 (11th Cir. 2011) (12-year-old prior conviction and securities fraud prohibitions were "needless to say" material to investors); SEC v. Conrad, 354 F. Supp. 3d 1330, 1345 (N.D. Ga. 2019) (finding the defendant's disciplinary history "material as a matter of law").

Though defendants argue that they sufficiently disclosed criminal and regulatory history in the PPM footnotes, this fails to take into account the critical omissions of defendant Perkins's criminal conduct entirely in the Yilaime NC PPM, the nature of the charges to which defendant

24

Perkins pleaded nolo contendere and his sentence in all three PPMs, as well as the desist and refrain order's underlying facts and sanctions.

In sum, the misrepresentations and omissions regarding defendant Perkins's charged criminal conduct and the California Department of Corporations's findings in the PPMs are material as a matter of law.

3.    With Scienter

Scienter refers to "a mental state embracing intent to deceive, manipulate, or defraud." Tellabs Inc. v. Makor Issues & Rts, Ltd., 551 U.S. 308, 319 (2007). This state of mind "encompasses 'severe recklessness,' defined as 'an act so highly unreasonable and such an extreme departure from the standard of ordinary care as to present a danger of misleading the plaintiff to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it.'" Phillips v. LCI Int'l, Inc., 190 F.3d 609, 621 (4th Cir. 1999); Pirate Inv. LLC, 580 F.3d at 241 ("The SEC meets its burden of proving scienter by establishing that the speaker acted intentionally or recklessly; the negligent speaker, however, avoids liability.").

Defendants "exercised [their] power of disposition for [defendant Perkins's] own benefit, [and] that conduct, without more, was a fraud." S.E.C. v. Zandford, 535 U.S. 813, 820 (2002). On that basis, the court finds as a matter of law defendants possessed a mental state "embracing intent to . . . defraud." Tellabs Inc., 551 U.S. at 319; see SEC v. George, 426 F. 3d 786, 795 (6th Cir. 2005) (defendant's expenditures of investor funds on personal expenses is a "fact that itself that establishes the requisite state of mind for committing securities fraud").

Where defendant Perkins previously was sanctioned for his failure to disclose that he "pled nolo contendre [sic] to felony counts relating to an indictment for fraudulent misappropriation of funds in a fiduciary capacity . . . and received a five year suspended sentence," defendants'

25

repeated omission here in the Yilaime NC offerings and incomplete disclosure in the Perkins Corp. offering at least are severely reckless, because they could not be the product of mere negligent omission. (Defs. Exhibit 3 (DE 79-3) ¶ 6); see Breard, 941 F.2d at 144 ("Sachnoff's failure to mention Berg's conviction in the initial offering memorandum could be considered reckless as a matter of law."). The same is true of defendants' incomplete disclosure of his disciplinary history in all three PPMs, wherein defendant provides that he was "completing a private transaction" and a "state security official who without full material to base its decision made an adverse ruling against him." (Pl. Exhibit 9: Yilaime NC Bond PPM (DE 72-13) at 55; Pl. Exhibit 10: Yilaime NC Stock PPM (DE 72-14) at 54; Pl. Exhibit 11: Perkins Corp. Bond PPM (DE 72-15) at 42 (also noting that a state security official "directed a [c]ease and [d]esist action be taken against [defendant] Perkins"). His opaque reference to "a private transaction" paired with exculpatory and defensive language suggesting the official was uninformed, renders the omission of the factual details and resulting sanction deceptive, particularly where those details pertain directly to the offer of securities, the exact conduct in issue here. Indeed, the danger of misleading investors with such framing and strategic omission was "so obvious that the defendant must have been aware of it." Phillips, 190 F.3d at 621.

Thus, the court finds as a matter of law that defendants acted with scienter.

4.      In Connection with the Purchase or Sale of Securities

To prove liability, the SEC must establish that the defendant "made a false statement or omission . . . in connection with the purchase or sale of securities." Pirate Inv. LLC, 580 F.3d at 239. Defendants' false and misleading statements were made in PPMs for Yilaime NC and Perkins Corp., which it is undisputed were provided to investors for the purpose of inducing the investors

to purchase the securities offerings. Defendants' statements and omissions were thus clearly made "in connection with" the sale of securities.

5. Use of Instrumentalities of Interstate Commerce

Finally, to prove liability, the SEC must establish that defendants used the instrumentalities of interstate commerce in their fraudulent offerings. See 15 U.S.C. § 77q(a); 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5. This element is satisfied if the defendant knows that the use of mail or wire services was a reasonably foreseeable consequence of a scheme. Pereira v. United States, 347 U.S. 1, 8-9 (1954). Here, it is undisputed that defendants made use of the Internet, namely email, to solicit investments. Investments were subsequently made by wire transfer and electronic deposits. That is all that is required. See, e.g., Matheson v. Armbrust, 284 F.2d 670, 673 (9th Cir.1960); United States v. Tallant, 547 F.2d 1291, 1297 (5th Cir.1977).

In sum, there is no genuine issue of material fact that defendants violated sections 17(a) and 10(b), and rule 10b–5 thereunder. Therefore, summary judgment is granted to plaintiff on its fraud claims against defendants

C. Summary Judgment Against Relief Defendant Family Trust

"Federal courts may order equitable relief against a person who is not accused of wrongdoing in a securities enforcement action where that person: (1) has received ill-gotten funds; and (2) does not have a legitimate claim to those funds." Commodity Futures Trading Comm'n v. Kimberlynn Creek Ranch, Inc., 276 F.3d 187, 192 (4th Cir. 2002).

It is undisputed that defendant Perkins used the investor money to purchase a personal residence owned in the name of relief defendant Family Trust. Where the court has determined that defendant Perkins did not have a legitimate claim to the full extent of the funds claimed, disgorgement against relief defendant Family Trust is proper. Therefore, summary judgment is granted on the issue of liability for equitable redress against relief defendant Family Trust. The

27

court reserves for further determination at later proceedings described below the appropriate remedies to be imposed.

## CONCLUSION

Based on the foregoing, plaintiff's motion for partial summary judgment (DE 72) is GRANTED. Plaintiff is awarded summary judgment against defendants Perkins, Yolaine NC, and Perkins Corp., on the issue of liability as to its fraud claims (counts I, II, and III). Plaintiff also is awarded summary judgment against defendant Family Trust on the issue of liability for equitable relief of disgorgement (count VIII). Still remaining for trial are the specific amount of disgorgement and civil penalties to be assessed against these defendants. The following claims also remain for trial:

1. Count IV asserting Yilaime NV aided and abetted violation of the anti-fraud provisions of the securities laws by defendants Perkins, Yilaime NC, and Perkins Corp.;

2. Count V asserting defendants Perkins, Yilaime NC, and Phuati failed to register securities sold in connection with the Yilaime NC offerings;

3. Count VI asserting defendant AmericaTowne made three public filings with false information; and

4. Count VII asserting defendant Perkins aided and abetted the same.

Where issues remain for trial, the court NOTICES the parties of the setting of conference at New Bern pursuant to Rule 16(a), Fed.R.Civ.Pro., Friday, October 14, 2022, commencing at 9:30 a.m. The court will engage in trial planning with the parties where a future trial date certain then will be set, together with date for final pretrial conference, and other ancillary pretrial and

trial deadlines. Suggested agenda topic(s) may be promoted by one or more parties in filing(s) due not later than October 7, 2022.

SO ORDERED, this the 30th day of September, 2022.


LOUISE W. FLANAGAN
United States District Judge

# Glossary

<u>Defendants</u>

- AmericaTowne Holdings, Inc. ("**AmericaTowne**")
  A Nevada corporation formerly known as ATI Modular Technology Corp., the surviving entity following merger with its subsidiary AmericaTowne, Inc., a Delaware corporation. AmericaTowne is named as a defendant in count VI, alleging certain reporting violations. This count is not subject of the instant motion. AmericaTown is defendant only with respect to count VI.

- Alton and Xiang Mei Lin Perkins Family Trust ("**Family Trust**")
  A trust formed by the named individuals allegedly holding ill gotten gains named as relief defendant in county VIII. Of note, Perkins's personal residence, funded at least in part by investments in question, is owned in the name of the Family Trust. Count VIII, the only count in which the Family Trust is named as a defendant, is subject of the instant motion.

- Alton Perkins ("**Perkins**")
  Chairman, chief executive officer, and chief financial officer of Yilaime NC, Yilaime NV, and Perkins Corp. Perkins is named as defendant, with others, in fraud counts I, II, III, all subject of the instant motion. Perkins also is named defendant, with others, in count V, alleging securities registration violations. This defendant is the sole defendant named in count VII, alleging aiding and abetting reporting violations complained about in count VI, involving AmericaTowne.

- Perkins Hsu Export Corporation ("**Perkins Corp.**")
  A Nevada "startup" corporation that engaged in a bond securities offering relevant to the instant action. Perkins Corp. is named as defendant, with others, in fraud counts I, II, III, all subject of the instant motion.

- Mabiala Phuati ("**Phuati**")
  Vice chairman and managing director of Yilaime NC. Phuati is named as defendant, with others, in count V, alleging securities registration violations. Plaintiff's partial summary judgment motion does not embrace this count. Phuati is not named as a defendant in any other count.

- Yilaime Corporation of NC ("**Yilaime NC**")
  A North Carolina "startup" corporation engaged in a bond securities offering and a stock offering relevant to the instant action. Yilaime NC is named as defendant, with others, in fraud counts I, II, III, all subject of the instant motion. Yilaime NC also is named as a defendant, with others, in count V, alleging securities registration violations. Plaintiff's partial summary judgment motion does not embrace count V.

- Yilaime Corporation of Nevada ("**Yilaime NV**")
  Owner of the Wells Fargo #2566 Account. Yilaime NV is named as a defendant in count IV, alleging aiding and abetting fraud complained about in counts I, II, and III. Plaintiff's partial motion does not embrace this count. Yilaime NV is not named as a defendant in any other count.

31