IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:19-CV-243-FL

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>ALTON PERKINS, YILAIME CORPORATION OF NC, PERKINS HSU EXPORT CORPORATION, and ALTON AND XIANG MEI LIN PERKINS FAMILY TRUST, )<br>)<br>Defendants.[1] ) | ORDER |

This matter is before the court on plaintiff's motion (DE 109) for remedies against defendants Alton Perkins ("Perkins"), Yilaime Corporation of NC ("Yilaime NC"), Perkins-Hsu Export Corporation ("Perkins Corp."), and Alton and Xiang Mei Lin Perkins Family Trust ("Family Trust"). The motion follows from the court's September 30, 2022, order holding Perkins, Yilaime NC, and Perkins Corp. liable for violating section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a) ("section 17(a)"), section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C § 78j(b) ("section 10(b)"), and 17 C.F.R. § 240.10b-5 ("rule 10b-5") promulgated thereunder, (counts I, II, and III), and awarding summary judgment on the issue of liability for equitable relief

---

[1] The court constructively amends the caption of this order to reflect dismissal of former defendants Yilaime Corporation of Nevada, Mabiala Phuati, and AmericaTowne Holdings, Inc. at January 23, 2023, trial scheduling conference.

of disgorgement against defendant Family Trust, (count VIII), denominated as relief defendant.[2] The motion has been briefed fully, and issues raised are ripe for ruling.

## BACKGROUND

The court incorporates herein by reference the statement of the case and facts detailed in this court's September 30, 2022, order on summary judgment. As pertinent herein, the court then determined that defendant Perkins, and two corporations under his control, defendants Yilaime NC, and Perkins Corp., made material misstatements and omissions constituting fraud in connection with the offer and sale of securities. The court also determined that defendant Perkins used fraudulently obtained investor money for his personal use, including to buy his personal residence, owned by relief defendant Family Trust. Finally, the court concluded disgorgement against relief defendant Family Trust is proper.

The court noticed the parties of Federal Rule of Civil Procedure 16 conference, which then was continued to accommodate ongoing settlement negotiations. Those negotiations were disrupted by defendant Perkins's guilty plea in related criminal case United States v. Alton Perkins, 5:22-CR-265-FL-1 (E.D.N.C. 2022), and the court held conference in New Bern January 23, 2023. At conference plaintiff moved to dismiss counts IV, V, VI, and VII, which the court allowed in its January 26, 2023, trial scheduling order.[3] Pursuant to that order bench trial was scheduled to

---

[2] As described therein, a relief defendant is "part of a suit only as the holder of assets that must be recovered in order to afford complete relief." Commodity Futures Trading Comm'n v. Kimberlynn Creek Ranch, Inc., 276 F.3d 187, 192 (4th Cir. 2002). Plaintiff does not allege relief defendant Family Trust committed securities fraud, but rather joins it to facilitate the collection of funds traceable to securities fraud by others. See S.E.C. v. Cherif, 933 F.2d 403, 414 (7th Cir. 1991).

[3] In the dismissed counts, plaintiff claimed former defendant Yilaime Corporation of Nevada aided and abetted defendants' fraud (count IV); defendants Perkins, Yilaime NC, and former defendant Mabiala Phuati failed to register securities sold in connection with two Yilaime NC offerings, in violation of 15 U.S.C. § 77e (count V); former defendant AmericaTowne Holdings, Inc. made three public filings with false information, in violation of 15 U.S.C. § 78m, 17 C.F.R. §§ 240.12b-20, 240.13a-1, 240.13a-11, and 240.13a-13 promulgated thereunder (count VI); and defendant Perkins aided and abetted the same (count VII).

commence April 10, 2023, on the specific amount of disgorgement and civil penalties to be assessed with respect to remaining counts: I, II, III, and VIII.

Sentencing in related criminal case followed on March 14, 2023, where Perkins pleaded guilty to making and subscribing a false tax return, in violation of 26 U.S.C. § 7206(1). Pursuant to a written plea agreement, Perkins agreed to make restitution to the Internal Revenue Service ("IRS") in the amount of $520,344.00 for tax years 2015, 2016, 2017, and 2018. The court denied Perkins's motion for a downward variance, in which defendant argued his his old age, military service, health conditions, pending lawsuits, and lack of criminal record took him outside of the normal purview of the typical defendant for whom a sentencing guideline calculation has been applied. The court sentenced Perkins to 24 months imprisonment.

At sentencing, counsel for Perkins, who also represents defendants here, moved for a Rule 16 conference in the instant civil case, representing that he had consent from plaintiff for the same. The court granted the motion, and teleconference in this case was held March 29, 2023. At conference, the parties jointly moved to provide written briefs to the court on the issue of remedies to be imposed against defendants in lieu of a bench trial. That motion was allowed, and as contemplated at hearing, plaintiff's instant motion for remedies followed.

Plaintiff annexes to its motion a prejudgment interest calculation and a proposed final judgment detailing penalties sought and the method and schedule by which it seeks payments be made. Defendants oppose the motion, with reliance upon the judgment made in related criminal case, a letter from the Bureau of Prisons designating the facility at which Perkins will serve his criminal sentence, a letter from the IRS alerting Perkins of its intent to levy on certain assets for failure to timely pay taxes, a demand for payment by the United States Department of Justice, and an excerpt of Perkins's testimony taken November 2, 2017. Plaintiff replied in support of its

3

motion, including as an exhibit the public tax records showing relief defendant Family Trust still owns the personal residence defendant Perkins used investor money to purchase, and that the home has appreciated significantly since being purchased.

**COURT'S DISCUSSION**

Based upon the court's determinations in its September 30, 2022 summary judgment order, plaintiff requests an order to:

1. Permanently enjoin defendants Perkins, Yilaime NC, and Perkins Corp. from violating section 17(a), section 10(b), and rule 10b-5 promulgated thereunder;

2. Impose a permanent officer and director bar against defendant Perkins;

3. Order disgorgement in the amount of $731,796.00, jointly and severally, against Perkins, Yilaime NC, and Perkins Corp., with the Family Trust being jointly and severally liable for $584,000.00 of the disgorgement;

4. Order prejudgment interest in the amount of $254,525.00, jointly and severally, against Perkins, Yilaime NC, and Perkins Corp. with the Family Trust being jointly and severally liable for $203,120.00 of the prejudgment interest amount; and

5. Order Perkins to pay a $414,366.00 civil penalty.

The court considers each category of relief in turn as follows.

A. Permanent Injunction

The court may permanently enjoin violators of any of the provisions of the securities acts or regulations from future violations upon a "proper showing." 15 U.S.C. §§ 77t(b), 78u(d)(1). "Proper showing" of need for injunction under the securities acts is based on requirements of statute and not with reference to normal requirements for injunctive relief. See 15 U.S.C. §§

4

77t(b), 78u(d)(1) (providing for injunctive relief only when a person "is engaged or about to engage" in illegal acts).

Although the United States Court of Appeals for the Fourth Circuit has not addressed the standard for a permanent injunction for securities violations, courts in this circuit and other circuit courts have held that "'[a]n injunction based on the violation of securities laws is appropriate if the [Securities and Exchange Commission (S.E.C.)] demonstrates a reasonable and substantial likelihood that the defendant, if not enjoined, will violate securities laws in the future.'" S.E.C. v. Marker, 427 F. Supp. 2d 583, 590 (M.D.N.C. 2006) (quoting S.E.C. v. Pros Int'l, Inc., 994 F.2d 767, 769 (10th Cir.1993)); see S.E.C. v. Bonastia, 614 F.2d 908, 912 (3d Cir. 1980) ("The well established standard developed by the courts to determine if an injunction should issue in a case involving securities violations reflects these purposes and is based on a determination of whether there is a reasonable likelihood that the defendant, if not enjoined, will again engage in the illegal conduct."); S.E.C. v. Mgmt. Dynamics, Inc., 515 F.2d 801, 807 (2d Cir. 1975) ("[T]he 'critical question' in issuing an injunction is whether "there is a reasonable likelihood that the wrong will be repeated."); S.E.C. v. First Am. Bank & Tr. Co., 481 F.2d 673, 682 (8th Cir. 1973) ("Once a prima facie case is presented that past violations have occurred, it becomes necessary for the lower court to determine the likelihood of future violations.").[4]

Determining the likelihood of future violations "depends on the totality of circumstances, and factors suggesting that the infraction might not have been an isolated occurrence are always relevant." Mgmt. Dynamics, 515 F.2d at 807. Factors include:

> (1) the seriousness of the original violation; (2) the isolated or recurrent nature of the infraction; (3) the degree of scienter involved on the part of the defendant; (4) the defendant's recognition of his unlawful conduct and the sincerity of his

---

[4] Internal citations and quotation marks are omitted from all citations unless otherwise specified.

assurances against future violations; and (5) the likelihood that the defendant's occupation will present opportunities for future violations.

Marker, 427 F. Supp. 2d at 590; S.E.C. v. Resnick, 604 F. Supp. 2d 773, 781-82 (D. Md. 2009) (same).

Plaintiff contends permanently enjoining the defendants defendants Perkins, Yilaime NC, and Perkins Corp. against future violations of section 17(a), section 10(b), and rule 10b-5 promulgated thereunder is necessary to protect investors. Defendants do not oppose that part of plaintiff's motion insofar as they omit mention of the issue entirely. The undisputed facts of defendants' conduct more particularly described in this court's September 30, 2022, order, show that defendants misrepresented the purpose for which investor funds would be used in each of the Yilaime NC and Perkins Corp. private placement memoranda ("PPMs"), omitted factual information about defendant Perkins's criminal and disciplinary history, despite prior sanction by the California Department of Corporations for the same, and ultimately misappropriated the vast majority of investor funds raised in the offerings. Considering those facts together with the lack of contrition expressed by defendants throughout the instant proceedings, the court concludes an injunction is warranted.

Defendants Perkins, Yilaime NC, and Perkins Corp. are enjoined against future violations of section 17(a), section 10(b), and rule 10b-5 promulgated thereunder.

B.  Officer and Director Bar Against Defendant Perkins

The court also may prohibit a person from acting as an officer or director of a public company "if the person's conduct demonstrates unfitness to serve as an officer or director of any such" company. 15 U.S.C. § 77t(e); 15 U.S.C. § 78u(d)(2).

While the Fourth Circuit has not addressed the standard for an officer and director bar, courts in this circuit have applied the same factors considered when enjoining violators from future

violations of provisions of the securities acts, in an exercise of the court's discretion. See, e.g., S.E.C. v. Lawbaugh, 359 F. Supp. 2d 418, 424-25 (D. Md. 2005) (considering "the degree of scienter involved on the part of the defendant, the isolated or recurrent nature of the infraction, the defendant's recognition of the wrongful nature of his conduct, the sincerity of his assurances against future violations, and the likelihood, because of defendant's professional occupation, that future violations might occur" (quoting S.E.C. v. Bonastia, 614 F.2d 908, 912 (3d Cir. 1980))).

Defendant Perkins does not address the issue of an officer and director ban in his opposition. For the reasons defendant Perkins is enjoined from future violations of the provisions of the securities acts, he also is prohibited from acting as an officer or director of a public company.

C. Disgorgement

In civil actions, the S.E.C. "can seek civil penalties and 'equitable relief.'" Liu v. S.E.C., 140 S. Ct. 1936, 1940 (2020) (citing § 78u(d)(5) ("In any action or proceeding brought or instituted by the Commission under any provision of the securities laws, . . . any Federal court may grant . . . any equitable relief that may be appropriate or necessary for the benefit of investors"); § 78u(d)(3) ("Money penalties in civil actions" (quotation modified)). Included within that umbrella of equitable relief is the remedy of disgorgement, by which wrongdoers are deprived of their net profits from unlawful activity. Id. at 1943; Kokesh v. S.E.C., 581 U.S. 455, 459 (2017) ("[C]ourts ordered disgorgement in SEC enforcement proceedings in order to deprive . . . defendants of their profits in order to remove any monetary reward for violating securities laws and to protect the investing public by providing an effective deterrent to future violations.").

The S.E.C., however, is prohibited "from seeking an equitable remedy in excess of a defendant's net profits from wrongdoing." Liu, 140 S. Ct. at 1946. Thus, in support of a disgorgement award, the S.E.C. must produce "a reasonable approximation of the defendant's ill-

7

Case 5:19-cv-00243-FL   Document 113   Filed 08/22/23   Page 7 of 15

gotten gains." S.E.C. v. Zada, 787 F.3d 375, 382 (6th Cir. 2015) (quoting S.E.C. v. Monterosso, 756 F.3d 1326, 1337 (11th Cir. 2014)); see S.E.C. v. Razmilovic, 738 F.3d 14, 31 (2d Cir. 2013), as amended (Nov. 26, 2013) (same).  Once the S.E.C. does so, "the defendant bears the burden of proving that the . . . estimate is unreasonable." Zada, 787 F.3d at 382; see Razmilovic, 738 F.3d at 31.  When the evidence shows that defendants acted in concert, or that one defendant is essentially the alter ego of the other, it is appropriate to impose joint and several liability for the disgorgement award. See S.E.C. v. Johnson, 43 F.4th 382, 390-92 (4th Cir. 2022)

Plaintiff seeks $731,796.00 in disgorgement against Perkins, Yilaime NC, and Perkins Corp., jointly and severally, having derived that amount by "calculating the percentage of funds that these defendants were possibly entitled to pursuant to the offering documents and multiplying that percentage by the funds actually raised." (Pl. Mem. (DE 110) at 13).  Plaintiff also seeks that that the Family Trust be jointly and severally liable for the $584,000.00 of the investor proceeds used to purchase a personal residence.

Defendants agree in their response that some amount of disgorgement would be equitable but seek that it be a lesser amount.  Defendants do not dispute that they received $731,796.00 in ill-gotten gains as a result of their securities law violations in this case, or otherwise contend that plaintiff's calculations are in error.  Rather, defendants contend the following factors mitigate the necessity for full disgorgement: defendant Perkins's active sentence in related criminal case, negative net worth, age, and mental health condition.  Defendants rely upon defendant Perkins's criminal judgment, included as an exhibit, imposing mandatory restitution in the amount of $520,344.00, but declining to impose a fine and waiving the interest requirement based upon Perkins's inability to pay.

Penalties imposed in defendant Perkins's criminal case are irrelevant to the instant determination as they were levied because of Perkins's commission of tax fraud, conduct wholly

separate from defendants' additional commission of securities fraud. Said differently, whereas this case concerns defendants' conduct in procuring profits by defrauding investors, related criminal case concerned defendant Perkins's failure to pay taxes on those profits. To the extent defendant seeks an offset of the federal income taxes he now must pay on these profits, the court knows of no authority, and defendants cite to none, requiring the court to deduct from the disgorgement figure the amount of ill-gotten gains paid to the government in income tax. See S.E.C. v. U.S. Pension Tr. Corp., 444 F. App'x 435, 437 (11th Cir. 2011) (concluding the same); see also S.E.C. v. Razmilovic, 822 F. Supp. 2d 234, 277 (E.D.N.Y.2011) (refusing to offset disgorgement amount for paid income taxes and finding "no legal authority to support a deduction for taxes paid upon ill-gotten gains"), aff'd in relevant part, vacated in part, remanded, 738 F.3d 14 (2d Cir. 2013); S.E.C. v. Koenig, 532 F. Supp. 2d 987, 994 (N.D. Ill. 2007) (stating that refusing to deduct income tax from the disgorgement amount was not punitive), aff'd in relevant part & remanded, 557 F.3d 736 (7th Cir. 2009). The court will not do so here.

As to defendant Perkins's inability to pay, "to withhold the remedy of disgorgement or penalty simply because a swindler claims that [he] has already spent all the loot and cannot pay would not serve the purposes of the securities laws." S.E.C v. StratoComm Corp., 89 F. Supp. 3d 357, 369 (N.D.N.Y. 2015), aff'd sub nom. S.E.C. v. StratoComm Corp., 652 F. App'x 35 (2d Cir. 2016). "[D]isgorgement is imposed . . . to deprive the defendants of their profits in order to . . . protect the investing public by providing an effective deterrent to future violations." Kokesh, 581 U.S. at 464. To reduce a defendant's disgorgement of profit because he no longer is in possession of such funds, perhaps because of discretionary spending or subsequent unsuccessful investments, would hardly provide an effective deterrent against future violations. See id. at 643 ("[W]hen the SEC seeks disgorgement, it acts in the public interest, to remedy harm to the public at large[.]"). Thus, defendant Perkins's inability to satisfy a disgorgement award is not a basis for reducing the amount he is ordered

9

to repay. For the same reason, the court also declines to reduce disgorgement because of defendant's age and mental health.

Defendants additionally contend concerns of fairness weight against entry of disgorgement against relief defendant Family Trust, which is not accused of any wrongdoing. At summary judgment, defendants did not dispute that defendant Perkins used at least $764,000.00 of the funds for his private use, including $584,000.00 to buy his personal residence, owned by relief defendant Family Trust. (Pl. Stmt. (DE 72-2) ¶¶ 61, 71). The court determined that defendant Perkins did not have a legitimate claim to the full extent of the funds claimed, and concluded disgorgement against relief defendant Family Trust was proper. See Commodity Futures Trading Comm'n v. Kimberlynn Creek Ranch, Inc., 276 F.3d 187, 192 (4th Cir. 2002) ("Federal courts may order equitable relief against a person who is not accused of wrongdoing in a securities enforcement action where that person: (1) has received ill-gotten funds; and (2) does not have a legitimate claim to those funds.").

Defendants now cite to testimony by defendant Perkins that a "portion" of the money used to purchase the personal residence was "a personal loan for the family to the trust" by a family member in China. (Tr. (DE 111-5) at 359:11-25). Defendants do not specifically identify who transferred funds to the Family Trust, when the funds were transferred, or the precise amount of funds that were transferred. Defendants also do not provide documentation or bank records reflecting such a loan. Defendants contend, however, that any disgorgement against relief defendant should be reduced on this basis.

On review of defendant Perkins's testimony, the court finds it insufficient to render the S.E.C.'s disgorgement calculation as to relief defendant Family Trust unreasonable. See Zada, 787 F.3d at 382; see also Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 962 (4th Cir. 1996) ("[S]elf-serving opinions without objective corroboration not significantly probative[.]").

10

Additionally, assuming some untainted funds were used to purchase the personal residence, the SEC is not required to trace specific funds where ill-gotten gains from securities fraud were commingled with legitimately obtained assets. See S.E.C. v. Rosenthal, 426 F. App'x 1, 3 (2d Cir. 2011) ("Imposing such a tracing requirement would allow an insider trading defendant to escape disgorgement by spending down illicit gains while protecting legitimately obtained assets or, as was the case here, by commingling and transferring such profits."); Razmilovic, 738 F.3d at 31 ("[S]o long as the measure of disgorgement is reasonable, any risk of uncertainty should fall on the wrongdoer whose illegal conduct created that uncertainty."). This court on summary judgment found based upon the undisputed facts on record investor funds were deposited into specific bank accounts and that funds from those accounts were used to purchase the house titled in the Family Trust's name. (See Pl. Stmt. (DE 72-2) ¶¶ 61, 71). Relief defendant Family Trust may not now avoid disgorgement by claiming that other untainted funds were commingled with investor funds.

The court accordingly orders $731,796.00 in disgorgement against Perkins, Yilaime NC, and Perkins Corp., jointly and severally. Relief defendant Family Trust is jointly and severally liable for the $584,000.00 of the investor proceeds that it received to purchase a personal residence.

D.    Prejudgment Interest

Plaintiff additionally seeks prejudgment interest on the amount of the disgorgement award totaling $254,525.00 against Perkins, Yilaime NC, and Perkins Corp., with the Family Trust being jointly and severally liable for $203,120.00 of the prejudgment interest amount. These amounts were calculated by multiplying the principal amount defendants received from their fraudulent scheme by the applicable interest rate during the relevant period of time. (See generally Prejudgment Interest Report (DE 110-1)). Defendants do not challenge plaintiff's calculations, but instead raise the same equity concerns raised in relation to disgorgement.

"Like disgorgement, an award of prejudgment interest is intended to prevent the defendant from profiting from his or her illegal conduct." Marker, 427 F. Supp. 2d at 592; see S.E.C. v. Sargent, 329 F.3d 34, 40 (1st Cir. 2003); S.E.C. v. Moran, 944 F. Supp. 286, 295 (S.D.N.Y. 1996) ("Requiring payment of interest prevents a defendant from obtaining the benefit of what amounts to an interest free loan procured as a result of illegal activity.").

> In deciding whether to award prejudgment interest, the court considers the following factors: (1) the need to fully compensate the wronged party for actual damages suffered; (2) the relative fairness of an award; (3) the remedial purpose of the statute involved; and (4) other general principles deemed relevant by the court.

Marker, 427 F. Supp. 2d at 592; Com. Union Assur. Co., plc v. Milken, 17 F.3d 608, 613 (2d Cir. 1994) (same).

As summarized in this court's order on summary judgment, defendant Perkins took for his personal use approximately 75% of the funds raised in the Yilaime NC and Perkins Corp. offerings and throughout this action has maintained such expenditure was proper. In defense of an award of prejudgment interest, defendants again cite to defendant Perkins's active sentence in related criminal case, negative net worth, age, and mental health condition. Defendants also again object to an award against relief defendant.

For the reasons provided in relation to disgorgement, the court finds these arguments unpersuasive, and concludes that an award of prejudgment interest is necessary to compensate the wronged parties and to achieve the remedial purpose of the statutes in question. On review of plaintiff's calculations, unchallenged by defendants, the court concludes an amount of $254,525.00 in prejudgment interest is fair against Perkins, Yilaime NC, and Perkins Corp., jointly and severally, with the Family Trust being jointly and severally liable for $203,120.00 of that total.

E.     Civil Penalty

In addition to disgorgement and prejudgment interest, plaintiff moves for the court to impose a civil penalty against defendant Perkins.

"[C]ivil penalties (unlike disgorgement) are intended to punish[] and label defendants wrongdoers." Johnson, 43 F.4th at 393; see Marker, 427 F. Supp. 2d at 592 ("A civil penalty is necessary because disgorgement merely requires the return of illegal profits; it does not impose an actual economic penalty as a deterrent to violations of the securities laws."). The securities acts set forth three tiers of money penalties establishing monetary caps for a violation of securities laws based on the nature of the violation. See 15 U.S.C. §§ 77t(d)(2), 78u(d)(3). Plaintiff here seeks that the third, most severe tier be applied, which tier is available when the violation (1) "involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement" and (2) "resulted in substantial losses or created a significant risk of substantial losses to other persons." 15 U.S.C. §§ 77t(d)(2)(C), 78u(d)(3)(B)(iii). Plaintiff contends that at the time the court rendered its summary judgment decision, for violations that took place after November 3, 2015, courts could impose a third-tier penalty for each violation of up to $207,183.00. See 17 CFR § 201.1001(a) (adjusting for inflation). Alternatively, though records illustrate defendant Perkins continued to spend misappropriated funds after November 3, 2015, plaintiff suggests the court could conclude that $160,000.00 is the appropriate tier three penalty amount based on Perkins' violations occurring between March 6, 2013, and November 2, 2015. See 17 C.F.R. § 201.1001, Table I (Civil Monetary Penalty Inflation Adjustments for Violations From December 10, 1996, Through November 2, 2015).

The securities acts leave to the court's discretion the total amount to be imposed, within the bounds statutorily set. 15 U.S.C. §§ 77t(d), 78u(d)(3) (providing that "[t]he amount of the

13

Case 5:19-cv-00243-FL   Document 113   Filed 08/22/23   Page 13 of 15

penalty shall be determined by the court in light of the facts and circumstances" of the case). The Fourth Circuit has recognized that "[o]ne factor courts routinely consider in assessing a penalty is whether the penalty should be reduced due to the defendant's demonstrated current and future financial condition." Johnson, 43 F.4th at 394. Other factors include:

> (1) the egregiousness of the defendant's conduct; (2) the degree of the defendant's scienter; (3) whether the defendant's conduct created substantial losses or the risk of substantial losses to other persons; [and] (4) whether the defendant's conduct was isolated or recurrent. These factors, however, are neither exhaustive nor should they be taken as talismanic.

Id.

The court agrees with plaintiff that defendant Perkins's fraudulent conduct qualifies for a third-tier penalty as it "created a significant risk of substantial losses to other persons," namely upwards of $731,796.00. See, e.g., S.E.C. v. Pallais, 2010 WL 2772329, at *6 (S.D.N.Y. July 9, 2010) (noting that $50,000 in possible investor losses meets the "substantial loss" element while $7,500 in possible investor losses does not), objections sustained in part on other grounds by S.E.C. v. Pallais, 2010 WL 5422531, at *3-5 (S.D.N.Y. Dec. 23, 2010); S.E.C. v. Tannenbaum, 2007 WL 2089326, at *5-6 (E.D.N.Y. July 19, 2007) (imposing third tier penalty based on losses of $64,000 and $95,000).

Considering factors identified by the Fourth Circuit, the egregiousness of defendant Perkins's conduct, the fact that the fraud was repeated across multiple offerings, and that it was acutely reminiscent his criminal and disciplinary history, signifying a high degree of scienter, all weigh in favor of a substantial fine. Defendant Perkins's demonstrated negative net worth, however, which is undisputed by plaintiff, counsels against a maximum penalty, particularly where defendant Perkins also is liable for payment of substantial disgorgement, prejudgment interest, and fees in related criminal case.

Bearing these considerations in mind, the court in its discretion declines to impose the higher tier penalty for conduct after November 3, 2015, and instead imposes a $160,000.00 penalty based on defendant Perkins' violations occurring between March 6, 2013, and November 2, 2015. Where defendant Perkins also will suffer an officer and director bar and the court has granted injunctive relief against future violations of the securities laws by him, the court additionally declines to multiply the civil penalty by the number of false statements made. See, e.g., S.E.C. v. Tourre, 4 F. Supp. 3d 579, 592-94 (S.D.N.Y. 2014) (imposing separate penalty for each of defendant's seven false statements); S.E.C. v. Colonial Inv. Mgmt. LLC, 659 F. Supp. 2d 467, 503 (S.D.N.Y. 2009) (imposing separate penalty for 18 violations of regulation).

## CONCLUSION

Based on the foregoing, the court GRANTS plaintiff's motion (DE 109) and imposes remedies in the form of permanent injunctive relief, disgorgement, prejudgment interest, and a civil penalty to the extent set forth herein. The court will enter separately plaintiff's proposed final judgment detailing reasonable methods and schedules for payments, with amounts amended to comply with the terms of this order.

SO ORDERED, this the 22nd day of August, 2023.

_____
LOUISE W. FLANAGAN
United States District Judge